**Volume 2**

**Pages 1 - 67**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
   VS.                          )      NO. CR 16-00411 VC
                                )
NAUM MORGOVSKY and IRINA        )
MORGOVSKY,                      )
                                )      San Francisco, California
            Defendants.         )      Tuesday, June 12, 2018
_____)
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

                    U.S. Department of Justice
                    United States Attorneys Office,
                    Tax Division
                    450 Golden Gate Avenue
                    Box 36055
                    San Francisco, CA  94102
                    (415) 436-7020
                    (415) 43-7009 (fax)
            **BY:  COLIN CHRISTOPHER SAMPSON**

For Plaintiff:

                    U.S. Attorneys Office
                    Oakland Branch
                    1301 Clay Street, #340S
                    Oakland, CA  94612
                    (510) 637-3918
                    (510) 637-3724 (fax)
            **BY:  ERIN A. CORNELL**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

**<u>APPEARANCES</u>**:

For Plaintiff:
                         Alex G. Tse
                         Acting United States Attorney
                         450 Golden Gate Avenue, 11th Floor
                         San Francisco, CA  94102-3495
                         (415) 436-7478
                  BY:  **JOHN HENRY HEMANN**

For Plaintiff:
                         U.S. Department of Justice
                         National Security Division
                         600 E Street, NW
                         BICN Building, Suite 10606
                         Washington, DC  20530
                  BY:  **JASON MCCULLOUGH**

For Defendant Naum Morgovsky:
                         Law Offices of William L. Osterhoudt
                         135 Belvedere Street
                         San Francisco, California  94117-3915
                         (415) 664-4600
                         (415) 664-4691 (fax)
                  BY:  **WILLIAM L. OSTERHOUDT**
                       **FRANK S. MOORE**

For Defendant Naum Morgovsky:
                         The Law Offices of Frank S. Moore
                         235 Montgomery Street, Suite 854
                         San Francisco, CA  94104
                         (415) 292-6091
                         (415) 292-6694 (fax)
                  BY:  **FRANK S. MOORE**

For Defendant Irina Morgovsky:
                         Law Offices of Richard Mazer
                         99 Divisadero Street
                         San Francisco, CA  94117
                         (415) 621-4100
                         (415) 621-4111 (fax)
                  BY:  **RICHARD B. MAZER**


Also Present:  Natalie Rezai-Zadeh

**Tuesday - June 12, 2018**                                    **8:02 a.m.**

                              P R O C E E D I N G S

                                   ---oOo---

(Proceedings were heard outside the presence of the jury:)

          THE CLERK:  Calling Case Number 16-CR-00411, USA

versus Naum Morgovsky.  Counsel, please state your appearances

for the Record.

          THE COURT:  I think we know who's here.  And you can

make your appearances when the jury comes in; but can I raise

one issue, just before I forget, while it's on my mind?  I know

you had something to talk to me about, too.

          MR. OSTERHOUDT:  Of course, sir.

          THE COURT:  Just before I forget, on the issue of

other-acts evidence, one thing that we did not discuss during

the pretrial conference that I want to make sure is on

everybody's radar screen is that the Indictment defines the

"conspiracy" seemingly somewhat narrowly, in terms of the

products involved.  Right?

     So I just want to make sure.  I mean, I sort of left it

open in terms of which other acts are -- which acts are other

acts, and which acts are intrinsic.  And -- but I wanted to

make sure it's on everybody's radar that the Government has, in

fact, limited the scope of the conspiracy with reference to the

items listed in the Indictment.  And so any acts that don't

involve those -- the devices or equipment listed in the

1   Indictment -- would have to be considered other acts.  Does

2   that make sense?

3           **MR. OSTERHOUDT:**  (Nods head.)

4           **MR. MC CULLOUGH:**  Understood, Your Honor.

5       I think one -- one point, just to explain the

6   componentry -- and I think, obviously, subject to any comments

7   Defense has on this, the Image Intensifier Tubes that are

8   identified within the Indictment -- Image Intensifier Tubes are

9   an item inside of a night-vision scope.

10          **THE COURT:**  Okay.

11          **MR. MC CULLOUGH:**  And so if we are discussing about a

12  functioning night-vision scope that's being exported that

13  contains the Image Intensifier Tube that is named in the

14  Indictment, there is -- we will provide evidence that

15  demonstrates that that Image Intensifier Tube, at times, was

16  removed in order to further the scheme.

17          **THE COURT:**  Okay.

18          **MR. MC CULLOUGH:**  Point two.  The other items that

19  are identified in the Indictment are Janos lenses.  Those Janos

20  lenses are associated with thermal-vision equipment.

21      So night-vision equipment allows you to see at night.

22      Thermal-vision equipment is something that you could use

23  during the day in a smoky or foggy environment.

24          **THE COURT:**  Okay.

25          **MR. MC CULLOUGH:**  And so if we're talking about

PROCEEDINGS

1  either night vision or thermal vision, both of those would be

2  considered within the scope of the conspiracy, subject to

3  Your Honor's limitations, as you've explained.

4       **THE COURT:**  Okay.  So sounds like we understand each

5  other in that regard.

6       **MR. MC CULLOUGH:**  We do.

7       **THE COURT:**  Okay.  And based on what you've just

8  said, it looks like I should tweak the description of the

9  charges slightly from what I have in the preliminary

10  instructions that I've put out last night.  Right?  I say, "The

11  Government has charged Irina Morgovsky and Naum Morgovsky with

12  conspiring to export certain controlled night-vision items

13  without a license, in violation of the Arms Export Control

14  Act."  Should I tweak that somehow?

15       **MR. MC CULLOUGH:**  Your Honor, I think -- I think

16  appropriately could be defined as "night-vision or

17  thermal-vision items" or "night-vision and thermal-vision

18  items."

19     I think the Defense has also often referred to items as

20  "components"; but I think "items" is the terms that's commonly

21  used.

22       **THE COURT:**  Okay.

23       **MR. MOORE:**  (Nods head.)

24       **THE COURT:**  All right.  Okay.  That was the issue I

25  wanted to raise.  Did you have something?

PROCEEDINGS

1          **MR. OSTERHOUDT:**  Oh, very little, Your Honor.  I

2    just -- our clients --

3          **THE COURT:**  By the way, hold on.

4          **MR. OSTERHOUDT:**  Yeah.

5          **THE COURT:**  I was going to say I should note for the

6    Record that the defendants are not here.  I'm assuming they're

7    waiving their right to be present during this discussion

8    leading up to jury selection?

9          **MR. OSTERHOUDT:**  Yes.

10         **THE COURT:**  Okay.  Is that true of --

11         **MR. MAZER:**  Yes.  Yes, it is, Your Honor.

12         **THE COURT:**  Thank you.

13         **MR. OSTERHOUDT:**  They're on their way, though.  And

14   -- they're on the way.  And I think they'll be here before --

15   you know, before the 8:30 session, but --

16         **THE COURT:**  They'd better be here before 8:30.

17         **MR. OSTERHOUDT:**  Well, I understand.

18      But there are some things that I want to discuss with them

19   briefly; not to take the Court or jury time, but there are some

20   issues that we need to discuss, I think, that we began doing

21   last evening.  And I feel that I would appreciate a brief

22   opportunity to do that when they get here, I think; I mean, as

23   long as they get here before 8:30.  A few minutes with the

24   clients would be helpful to us, I think, in moving forward with

25   the jury selection.  I'm not trying to be cryptic, but I think

1   there are things we've got to discuss of importance -- of

2   importance to the proceedings.

3            THE COURT:  Okay.  And you want that before the

4   jurors -- prospective jurors come in?

5            MR. OSTERHOUDT:  I would appreciate it.  Yeah.

6            THE COURT:  Okay.  That's fine.

7            MR. OSTERHOUDT:  I'm not going to take a lot of time.

8            THE COURT:  That's fine.  As long as it doesn't take

9   too long, that's fine.

10           MR. OSTERHOUDT:  Thank you.  Thank you, Your Honor.

11           THE COURT:  Okay.  Is there -- let's see.  Are there

12  any other cause challenges?

13           MR. OSTERHOUDT:  Not for the defendants.

14           THE COURT:  Okay.  And for the Government?

15           MR. MC CULLOUGH:  No, Your Honor.

16           THE COURT:  Okay.  Is there anything else to discuss

17  regarding jury selection?  Any questions from anybody about the

18  process, or anything like that?

19           MR. OSTERHOUDT:  No.

20           THE COURT:  Sorry.

21           MS. CORNELL:  I have a question, Your Honor.

22           THE COURT:  Sure.

23           MS. CORNELL:  So on the jury questionnaire, where

24  people might have marked it as private, how do I signify to the

25  Court I would like to speak them, in light -- I understand it

PROCEEDINGS

1  would be during a break.  Do I just mention it?  How would I go

2  about doing that?

3       **THE COURT:**  So usually what I do is I tell people

4  that if there's something they wish to discuss with us in

5  private, with "private" being loosely defined, that we'll

6  provide an opportunity for them, sort of towards the tail end

7  of the process, to do it.

8       **MS. CORNELL:**  Okay.

9       **THE COURT:**  And so, you know, at that point if

10 there's anybody that you would --

11      And then we'll send people -- you know, we'll send the

12 prospective jurors out for a break.  So this will probably be

13 after *voir dire*.

14      So I think the way we'll do it is they'll come in.  I'll

15 do hardships with people.  Then we'll have all the remaining

16 prospective jurors introduce themselves briefly; answer a few

17 questions that we'll hand out to them; just, *Who are you?  And*

18 *where do you work?  And where do you live?*  And stuff.

19      And then you guys can do your thing for about -- depending

20 on what time it is, I'll probably give you each 45 minutes.

21      What did I say last time, in terms of --

22      Did I say?

23      **MS. CORNELL:**  You said the Government 45, and then

24 each defendant 30.

25      **THE COURT:**  Okay.  And I'll probably do that, unless

PROCEEDINGS

1   the initial process goes much longer than anticipated.

2       And then after that process, we'll have a period of time

3   where people can discuss matters privately.  And we'll excuse

4   everybody, except for those who want to discuss something

5   privately; and we'll bring those people in, one by one.  And at

6   that point you can let us know which -- if there's anybody

7   other than the people who wish to speak privately with us.  If

8   there's anybody else who you wish to speak with privately, you

9   can let us know, and we'll hold those people back, too.

10      Does that sound okay?

11          **MS. CORNELL:**  Okay.  Yes.  Thank you.

12          **THE COURT:**  Okay.  Let me see.  How many people do we

13  have on this list?

14          **THE CLERK:**  Fifty-one.

15          **THE COURT:**  Fifty what?

16          **THE CLERK:**  Fifty-one.

17          **THE COURT:**  Fifty-one.

18      So, you know, I think, you know, after hardships I also

19  may let a few people go towards the end of the list, because it

20  seems to me that we have -- you know, we have a lot more -- we

21  have quite a few more people than we need.  So let's say, for

22  example, I let three more people go on hardship.  I might let

23  an additional few people go at the end of the list, to avoid

24  wasting their time here, just to let you know; but I'll think

25  about that a little more back in my office; crunch the numbers,

1    if you will.

2        One thing I did yesterday was I tore off the front page of

3    each questionnaire. You might want to do that.  Make life

4    easier for you during the selection process.

5        And with that, I will just come back out.

6        So the Morgovskys will be here at 8:30?

7            **MR. OSTERHOUDT:**  Yes, sir.

8            **THE COURT:**  And you need some time with them?

9            **MR. OSTERHOUDT:**  Please.

10           **THE COURT:**  So shall I plan on coming back out here

11   at 8:45?

12           **MR. OSTERHOUDT:**  That would be very good.

13           **THE COURT:**  Is that okay?

14           **MR. OSTERHOUDT:**  Yes.

15           **THE COURT:**  So we will plan on bringing the jury down

16   here at 8:45.

17       And can I ask one question?  Kristen, I have this thing

18   called "Attorneys' List" on the bench up here.

19           **THE CLERK:**  Mm-hm.

20           **THE COURT:**  They have the list that the Jury Office

21   refers to as "the Judge's List."  Correct?  The jurors are in

22   the right order?  I'm looking at this list (indicating), and I

23   want to make sure --

24           **THE CLERK:**  That's from yesterday.

25           **THE COURT:**  Okay.  Toss that one.

PROCEEDINGS

1      THE CLERK:  Yes.  That should be --

2      THE COURT:  They have this list in the randomized

3  order?

4      THE CLERK:  Yes, yes.

5      THE COURT:  Okay.  All right.  Okay.  I'll be back

6  out at -- Kristen will bring the jury down at 8:45, and I'll be

7  back out shortly after that.

8      MR. OSTERHOUDT:  Thank you.

9      THE COURT:  If anybody needs me, just let Kristen

10  know.

11      THE CLERK:  Court is in recess.

12  (Recess taken from 8:12 a.m. until 8:51 a.m.)

13  (Proceedings were heard outside the presence of the jury:)

14      THE COURT:  Okay.  The jurors were, I guess, on their

15  way down.  So what's going on?

16      MR. OSTERHOUDT:  Well, what we wanted to tell you is

17  that we've had discussions with the Government, with a view to

18  resolving the matter.  And we've talked to Mr. and

19  Mrs. Morgovsky about it.  And it's somewhat complex.  It's

20  unfortunate that we find ourselves at the 11th hour, but we do.

21  We have such -- an agreement to which they've agreed.  And our

22  question is whether it makes sense to impanel a jury under

23  those circumstances.

24      Obviously, it has to be put down.  You know, the

25  Government put time limitations on us, and we are aware of

PROCEEDINGS

1    those.  They wanted to have it resolved.

2        The disposition is different for Mr. Morgovsky than

3    Mrs. Morgovsky.

4        We think, though, if the matter resolves a potentially

5    lengthy trial, then it's worthwhile.  And that's why I brought

6    it to your attention.  I don't know if it makes sense to

7    impanel the jury while that's happening.

8            **MR. MOORE:**  With the proviso that the Government

9    doesn't want the jury to be dismissed in any way.  So, you

10   know, we understand.  We don't want to interrupt the flow if

11   things fall apart, but we are committed to doing the deal that

12   has been proposed.

13           **THE COURT:**  Well, I mean, I guess I have a gut

14   reaction to this, but I'm happy to hear from -- you know, from

15   everybody on it.  I guess my gut reaction is that, you know,

16   everything seems a little precarious here, you know, from my

17   standpoint, at least.  I mean, you all know better than I do,

18   but I mean, my --

19       You know, I would not be inclined -- I certainly don't

20   want to keep the prospective jurors waiting up there for too

21   long.  And I would also be reluctant to let the prospective

22   jurors go until there's a -- you know.

23           **MR. MAZER:**  Absolutely.

24           **THE COURT:**  And so I sort of tentatively lean towards

25   picking a jury right now, and letting you -- you know, letting

1    you work on this after we pick a jury; but I'm open to other

2    suggestions if you all have them.  I -- you know, that's just

3    my gut reaction.

4              **MR. MOORE:**  Well, the term right now -- the proposed

5    term is we had until 11:00 o'clock to accept.  So I don't know

6    exactly what "accepting" will mean for the Government; but if

7    the 11:00 o'clock deadline is material, it needs to be honored

8    for us to get the deal.

9              **THE COURT:**  Mm-hm.

10             **MR. MOORE:**  So unless there's an adjustment, that's

11   how I see it.

12             **MR. SAMPSON:**  I think the Court's view is correct.

13   We do not want to dismiss or delay the jury, but 11:00 is sort

14   of because we want to avoid swearing in the jury, and then

15   having --

16             **THE COURT:**  You want to avoid --

17             **MR. SAMPSON:**  -- a resolution -- jeopardy attaching

18   before there's a resolution.

19         And so, Your Honor, I think we could be somewhat flexible

20   about that; but you know, we want to proceed ahead.  And if the

21   defendants essentially accept, and it's not a written

22   agreement, I want to avoid Rule 11 here, but I don't want to

23   get the Court involved, but --

24             **THE COURT:**  Yeah.

25             **MR. SAMPSON:**  -- I think we should essentially --

PROCEEDINGS

1        **THE COURT:**  Right, but surely I can be involved to

2   the extent that it's necessary to allow me to manage the trial,

3   and allow me to effectively and responsibly manage the time of

4   these members of the community who have come in as prospective

5   jurors.

6        **MR. SAMPSON:**  Absolutely.

7        **THE COURT:**  So, I mean, like, how long is it going to

8   take?  Like, what needs to happen?  I mean, are you envisioning

9   that they would actually enter guilty pleas before we let the

10  prospective jurors go?

11       **MR. SAMPSON:**  Yes.

12       **MR. MAZER:**  Yes.

13       **THE COURT:**  Okay.  And so what needs to happen before

14  a guilty pleas are entered?

15       **MR. MAZER:**  We need to spend some time with our

16  clients, Your Honor.  We worked for about a half an hour with

17  them before the Court came in, from 8:15 to 8:45.  And I think

18  we made substantial progress, but we're not done.  And I would

19  estimate that it would not take more than half an hour -- it

20  might take less -- for us to know whether this is going to

21  happen.

22     And I think that there is a substantial chance that this

23  will happen, and avoid a lengthy and complicated trial.  I

24  can't promise it will, but we're having a very intense

25  discussion, and we're going over the issues.  There are a

1   number of issues that have to be discussed.

2         **THE COURT:**  Well, you know, I guess I don't really

3   know what choice I have.  I mean, the problem with picking the

4   jury -- you know, bringing the jurors down now, and proceeding

5   with jury selection -- is that you need the time to speak.

6   Right?  And you can't do that while we're picking a jury.

7         So, you know, it seems to me that the two options are the

8   deadline needs to change, but if you're avoiding -- if this

9   needs to happen before jeopardy attaches, then changing the

10  deadline to 1:00 o'clock or 2:00 o'clock, or something, it

11  seems to me, doesn't accomplish anything, you know, unless we

12  were to pick the jurors, but not swear them in.

13        This is a little silly.  Like, I don't quite understand

14  why the deadline was 11:00 o'clock, as opposed to 8:00 a.m.

15  this morning or, you know -- or last week.

16        **MR. SAMPSON:**  Of course, Your Honor.  Your Honor,

17  there -- these are very late discussions.  The Government does

18  not want to be distracted by those discussions as it prepares

19  for trial, in the event that they're not fruitful.  And so the

20  Government's always willing to consider a resolution that is

21  efficient.  That's why --

22        **THE COURT:**  Why do we have to wait?  I mean, why --

23  what's the problem with guilty pleas being entered after the

24  jury's impaneled?  What's the problem with that?

25        **MR. SAMPSON:**  They can be open pleas, Your Honor.

PROCEEDINGS

1   They can be without a deal with the Government, but the

2   Government is not going to bind itself if it's already in

3   trial.

4           **THE COURT:**  But why?

5           **MR. SAMPSON:**  That's -- Your Honor, it's the

6   Government's view that that's the appropriate outcome.

7           **THE COURT:**  Why?

8       I mean, why didn't you --

9       I mean, if you're willing to give them a deadline of

10  11:00 o'clock when we're supposed to be picking a jury at 8:30,

11  then what's the problem of giving them a deadline of

12  2:00 o'clock, and reaching the same deal three hours later --

13          **MR. SAMPSON:**  I totally agree.

14          **THE COURT:**  -- after the jury's impaneled?

15          **MR. SAMPSON:**  That's perfectly fine, Your Honor.  We

16  can pick the jury.  There will be breaks during this *voir dire*.

17  The defendants' attorneys can talk to their clients, and we can

18  come back.  The jury does not have to be sworn in today.  They

19  can come in in the morning, and be sworn in before opening

20  arguments.  And if a plea is entered before that happens, then

21  they can be relieved.  They can be dismissed.

22          **THE COURT:**  You -- we would pick the jury, but not

23  swear them in?

24          **MR. SAMPSON:**  I believe -- I believe we could swear

25  them in in the morning, give them their instructions, and then

1  proceed with opening argument.

2          THE COURT:  Can I ask you one more time:  Why does it

3  matter if the jury is sworn in or not?  Like, what's the magic

4  of that?

5          MR. SAMPSON:  That's my -- that is the authority that

6  I have.  And I want to avoid the shoals of Rule 11 in

7  discussing it with the Court.

8          THE COURT:  That's the authority you have from whom?

9          MR. SAMPSON:  The Criminal Chief.

10          THE COURT:  Okay.  I'm going to give you -- I'm going

11  to give you all half an hour.  Okay?  You have half an hour.

12          MR. MAZER:  Thank you, Your Honor.

13          THE COURT:  We're in -- if necessary, I will get on

14  the phone with the Criminal Chief to talk to them about this.

15          MR. MAZER:  Thank you.

16          THE COURT:  Thank you.

17          MR. SAMPSON:  And, Your Honor, to be clear --

18          THE COURT:  What?

19          MR. SAMPSON:  -- the Court's concern is with just the

20  timing of this?

21          THE COURT:  Yeah.  I'm pissed that we are keeping the

22  jury waiting, and that you are not -- you are telling me that

23  we -- that the offer expired -- has to expire before the jury

24  is sworn in.  I don't understand that.

25      You -- if you could give me a reason, then maybe I won't

PROCEEDINGS

1   be pissed; but can you give me a rational reason why the same

2   deal couldn't be reached at 2:00 p.m., after the jury is sworn

3   in?

4           **MR. SAMPSON:**  I don't think I'm going to give the

5   Court a satisfactory response.

6           **MR. MOORE:**  And just -- this is -- the 11th hour here

7   is not the prosecutor's fault.

8       We take full responsibility for, you know, the 11th hour,

9   because it's just the way it happened.  And so --

10          **THE COURT:**  Okay.  Well, that's fine, but I -- you

11  know, I want to hear --

12      So I'm going to be back in half an hour.

13          **MR. MAZER:**  Thank you.

14          **THE COURT:**  And I want to hear from you a rational

15  reason why the jury can't be sworn in before the deal is taken.

16  That's what I want to hear from you.  So I want you to go back

17  and speak with Ms. Valliere, and be ready at 9:30 to explain to

18  me why that is.  Okay?

19          **MR. SAMPSON:**  Thank you, Your Honor.

20          **THE COURT:**  Thank you.

21          **MR. MOORE:**  Thank you, Judge.

22          **THE COURT:**  Thank you.

23  (Recess taken from 9:01 a.m. until 10:00 a.m.)

24          **THE COURT:**  Okay.  So I understand we have either

25  plea agreements, or changes of plea in the case?  Is that

PROCEEDINGS

1  right?

2        **MR. OSTERHOUDT:**  Yes, Your Honor.

3        **THE COURT:**  Okay.  For both defendants?

4        **MR. OSTERHOUDT:**  Yes.

5        **THE COURT:**  Okay.  First, before I forget,

6  Mr. Sampson, I want to just say that I apologize.  I have my

7  testiest moments when I'm upset about keeping jurors waiting,

8  and not being efficient with the time of members of the

9  community; but when I got back to chambers I thought about it

10  for a moment.  And I understand why your Office has a policy of

11  requiring that the offer go away before the jury is impaneled.

12  I get it now.  And so I apologize for being testy with you.

13        **MR. SAMPSON:**  Thank you, Your Honor.  And I think a

14  better explanation that could have come from me is that we're

15  trying to save the Court's and the jurors' time, as well.

16        **THE COURT:**  Well, actually, that's not what I -- what

17  I was thinking is that, you know, you can't allow defendants to

18  see how the trial is going to go, and then decide whether to

19  accept an offer or not.  There has to be -- there has to be

20  an -- so I apologize for --

21        **MR. SAMPSON:**  Yes, sir.

22        **THE COURT:**  So I apologize for being so annoyed with

23  you.  Okay.  So who -- what's happening?

24        **MR. MAZER:**  Well, we have the agreement (indicating).

25  And I've been reviewing it with my client.

1          THE COURT:  Okay.

2          MR. MAZER:  We're not quite finished with it.  We

3  have a couple questions to ask the prosecutor about.  If we

4  could have a minute or two, I think we can straighten them out.

5          MR. SAMPSON:  I think we can save some time,

6  Your Honor, because the proposed agreement with Mrs. Morgovsky

7  is dependent on Mr. Morgovsky's successful plea.

8          THE COURT:  Okay.

9          MR. MAZER:  That --

10          MR. SAMPSON:  So we should start with Mr. Morgovsky.

11          MR. MAZER:  Yeah.

12          MR. SAMPSON:  And John Hemann's happy to talk to

13  Mr. Mazer.

14          MR. MAZER:  Okay.

15          THE COURT:  What I would propose, actually, if it's

16  okay with you, is -- well, maybe this doesn't make sense, but I

17  was going to suggest if Mrs. Morgovsky needed a little bit more

18  time, we could take a plea from Mr. Morgovsky.

19      I could go, then, talk to the prospective jurors, and

20  release them.

21          MR. MAZER:  Okay.

22          THE COURT:  And then we can proceed with

23  Mrs. Morgovsky.

24      But if you're uncomfortable with that --

25          MR. SAMPSON:  I think that if it's signed by the

1    Defense at the time you go to talk to the jurors, we're fine

2    with that.

3              THE COURT:  Okay.  All right.

4              MR. MAZER:  Let me talk to Mr. Hemann.  Okay?

5              THE COURT:  What?

6              MR. MAZER:  Are you going to take the plea from

7    Mr. Morgovsky now?

8              THE COURT:  Yes.

9              MR. MAZER:  Then I'm going to talk to Mr. Hemann

10   about -- (indicating).

11             THE COURT:  Yes.

12        (Discussion off the record.)

13             THE COURT:  And, Mr. Sampson, is it an open plea from

14   him?

15             MR. SAMPSON:  It would be to Nine through Eleven.

16   Yes, Your Honor.

17             THE COURT:  Good.

18             MR. SAMPSON:  Counts Nine through Eleven, open.

19             MR. OSTERHOUDT:  Your Honor, the cases are kind of

20   bound up together, to where the remaining issues -- very few --

21   that Mr. Mazer is going to talk to Mr. Hemann about have to be

22   resolved, you know, before we go forward with Mr. Morgovsky's

23   plea.

24             THE COURT:  Okay.

25             MR. OSTERHOUDT:  We'll be ready to do that shortly.

1          THE COURT:  Okay.  I'll just sit here and wait.

2          MR. OSTERHOUDT:  Thank you.

3  (Pause in proceedings.)

4          MR. OSTERHOUDT:  Your Honor, these matters are all

5  resolved, but he's just writing them down.  So thank you for

6  your patience.

7          THE COURT:  No worries.

8  (Discussion off the record.)

9          MR. MAZER:  Your Honor, Mr. Hemann is making some

10 changes in Irina Morgovsky's Plea Agreement that we discussed.

11         THE COURT:  Okay.

12         MR. MAZER:  And he's now going to get us a clean

13 Agreement.

14         THE COURT:  Okay.  And is Mr. Morgovsky's --

15 Mr. Morgovsky's going to be doing an open plea?

16         MR. OSTERHOUDT:  Yes.

17         MR. MAZER:  Yes.

18         THE COURT:  And so is there an application that's

19 been filled out?  You know.  We have that.  I don't know if

20 it's necessary, but do we have that?

21         MR. SAMPSON:  I'm -- it has not.  If there is one, I

22 think we can --

23         THE COURT:  Would you do it verbally?

24         MR. SAMPSON:  -- we can work it through.

25         THE COURT:  I'm fine.  As long as everybody is

PROCEEDINGS

1  comfortable with just doing it verbally, I'm fine with that.

2          **MR. SAMPSON:**  Yes, sir.

3          **MR. OSTERHOUDT:**  Yes.

4          **THE COURT:**  But I need to be -- you need to give me

5  an explanation of what the maximum --

6          **MR. SAMPSON:**  Mm-hm.

7          **THE COURT:**  You want to do that right -- should we do

8  that now, while we're waiting?

9          **MR. SAMPSON:**  Yes.  Let me make sure that I brought

10 that up.  It was -- let me make sure my colleague brings it up

11 from my office.

12         **THE CLERK:**  That's going to be tough, for PSR

13 purposes.

14         **THE COURT:**  Shall we make them fill out an

15 application?

16         **THE CLERK:**  I think we need to.  I think we really

17 should.

18         **THE COURT:**  Do you want to print out an application

19 for them?

20         **THE CLERK:**  I wouldn't even know where to get it.

21         **THE COURT:**  Kristen is suggesting that it would be

22 better, for purposes of our recordkeeping and the PSR process

23 and everything, if there could be an application for permission

24 to enter a guilty plea.  So I don't know where -- it must be on

25 the Court's website somewhere.

1     THE CLERK:  I'm trying to get there right now.

2  Criminal forms.

3     THE COURT:  And that way, there's a signed writing --

4     THE CLERK:  Application --

5     THE COURT:  -- acknowledging the maximum penalties,

6  and any minimum penalties, and all that.  I think it would be

7  better to do that.

8     MR. SAMPSON:  Agreed, Your Honor.  And forgive me.  I

9  have not had the opportunity to have an open plea, so I wasn't

10  aware of a form.

11     THE COURT:  That's all right.

12     MR. SAMPSON:  I do a have penalty sheet from the

13  Indictment which could be used in place of it.

14     MR. OSTERHOUDT:  The Indictment.

15     MR. SAMPSON:  Yeah.  So we would just cross that one

16  (indicating) out -- that one out.  They're not getting

17  dismissed at this time, but just --

18     THE COURT:  Are you printing it out for them?

19     THE CLERK:  I am.

20  (Discussion off the record.)

21  (Recess taken from 10:10 a.m. until 10:47 a.m.)

22  (Whereupon a document was tendered to the Court.)

23     MR. OSTERHOUDT:  Your Honor, we are ready to proceed.

24     THE COURT:  Okay, but I'm -- what I want to do is,

25  once I have signed agreements from both defendants, I want to

1  go talk to the jurors and release them, and then I'll come back

2  and take the pleas.

3      Yes.  I have Mr. Morgovsky's.  I'm just waiting for the

4  go-ahead on Mrs. Morgovsky's Plea Agreement, and then I'll go

5  talk to the jurors.

6          **MR. OSTERHOUDT:**  Oh, okay.

7          **THE COURT:**  Shouldn't take more than five, ten

8  minutes, and then I'll be back.

9          **MR. OSTERHOUDT:**  Fine, Your Honor.  Thank you.

10 (Recess taken from 10:48 a.m. until 10:50 a.m.)

11         **MR. SAMPSON:**  I think we have what we need at this

12 time.  I think we have the signed Agreements.

13         **THE COURT:**  Oh.  You have the signed Agreements?

14 I'll go talk to the jurors.  And I'll be back in about five,

15 ten minutes.  Okay?

16         **MR. SAMPSON:**  Thank you for your time.

17 (Recess taken from 10:50 a.m. until 10:57 a.m.)

18         **THE COURT:**  Okay.  So are we ready to begin with

19 Mr. Morgovsky?

20         **MR. OSTERHOUDT:**  Yes, Your Honor.

21         **MR. SAMPSON:**  Yes, sir.

22         **THE COURT:**  So let me ask.  So I have this

23 Application for Permission to Enter a Plea of Guilty from

24 Mr. Morgovsky.  And I had a clarification question, and it's

25 with respect to the maximum penalties.

PROCEEDINGS

```
 1        First of all, let me just get -- make clear there's --
 2   there is no mandatory minimum prison sentence associated with
 3   any of these counts.  Is that correct?
 4        MR. SAMPSON:  With respect to --
 5        MR. OSTERHOUDT:  Yeah.
 6        MR. SAMPSON:  -- Counts Nine to Eleven, there's no
 7   mandatory minimum.
 8        THE COURT:  Okay.  And you list on here in the
 9   application that the maximum prison sentence is 20 years.  Is
10   that 20 years per count?
11        MR. SAMPSON:  That is correct.  It's 20 years per
12   count.
13        THE COURT:  Okay.  So the maximum prison exposure
14   Mr. Morgovsky is facing as a result of pleading guilty to these
15   three counts is 60 years in prison.  Is that correct?
16        MR. SAMPSON:  That is correct, Your Honor.
17        THE COURT:  Okay.  Mr. Osterhoudt, is that consistent
18   with your understanding?
19        MR. OSTERHOUDT:  Yes.
20        THE COURT:  Okay.  And it says here that the maximum
21   fine is a million dollars.  I'll ask the same question:  Is
22   that a million dollars per count; or a million dollars, total,
23   for the three counts?
24        MR. SAMPSON:  So it is $1 million per count.  It is
25   $1 million for Count Nine, the ITAR count.
```

PROCEEDINGS

1          THE COURT:  Okay.

2          MR. SAMPSON:  It is $500,000 for each of Counts Ten

3   and Eleven.  I think we wrote the highest number on there; that

4   perhaps it should say 1 million, semicolon, 500.

5          THE COURT:  Okay.  So just to be clear, for

6   Count Nine the maximum fine is $1 million?

7          MR. SAMPSON:  Yes, sir.

8          THE COURT:  For Count Ten, the maximum fine is

9   $500,000?  And for Count Eleven, the maximum fine is $500,000;

10  for a total maximum fine for the three counts of $2 million.

11  Is that right?

12         MR. SAMPSON:  Correct, Your Honor.

13         THE COURT:  Mr. Osterhoudt, is that consistent with

14  your understanding?

15         MR. OSTERHOUDT:  Yes.

16         THE COURT:  Okay.  I think that was the only question

17  I had.  So we can proceed.

18    Mr. Morgovsky, I'm sure that your attorney has told you

19  that I have to ask you a series of questions, and you have to

20  answer those questions under oath.  So I will ask the courtroom

21  deputy to administer the oath now.

22         THE CLERK:  Please raise your right hand.

23                   NAUM MORGOVSKY,

24  called as a defendant for The Court, having been duly sworn,

25  testified as follows:

1          **DEFENDANT NAUM MORGOVSKY:**  Yes.

2          **THE CLERK:**  Thank you.

3                              <u>EXAMINATION</u>

4   **BY THE COURT**

5   **Q.**   Okay.  Mr. Morgovsky, now that you're under oath, if you

6   answer any of my questions falsely, the Government can make

7   additional Counts against you for perjury or for making false

8   statements.  Do you understand that?

9   **A.**   Yes.

10  **Q.**   Okay.  Now, as we go through thee questions, if the

11  process is going too quickly for you or if you don't understand

12  any of my questions, please feel free to ask me to repeat a

13  question.  Please feel free to let me know that you don't

14  understand.  And please feel free to call "time out," and speak

15  with your lawyer if you need to do so.  Okay?

16  **A.**   Okay.

17  **Q.**   This is not a speed test.  The only important thing here

18  is that you fully understand everything we discuss here today.

19  **A.**   Yes.

20  **Q.**   Okay?  Do you understand?

21  **A.**   Yes.

22  **Q.**   Okay.  What is your full name?

23  **A.**   Naum.  N-a-u-m.  Morgovsky.  M-o-r-g-o-v-s-k-y.

24          **THE COURT:**  Thank you.  Mr. Osterhoudt, you want to

25  move the microphone a little closer to Mr. Morgovsky?  Thank

1  you.

2  **Q.**   And are you a U.S. citizen?

3  **A.**   Yes.

4  **Q.**   Where were you born?

5  **A.**   Kiev, Ukraine, former U.S.S.R.

6  **Q.**   Okay.  And you've been naturalized?

7  **A.**   Yes.

8  **Q.**   Okay.  And how old are you?

9  **A.**   I was born in 1949.  I guess I'm 68.

10  **Q.**   Okay.  How far did you go in school?

11  **A.**   I got an engineering degree, which is -- it's a six-year

12  degree, which is supposed to be an equivalent of master's

13  degree.

14  **Q.**   Okay.  And are you currently under the influence of any

15  drug, medication, or alcoholic beverage of any kind that would

16  hinder your ability to understand the proceedings here today?

17  **A.**   No.

18  **Q.**   Okay.  Are you fully satisfied with the advice and

19  information you have received from your lawyer in this case?

20  **A.**   Yes.

21  **Q.**   And have you had adequate time to discuss with your lawyer

22  the -- the concept of pleading guilty here today?

23  **A.**   Yes.

24  **Q.**   Okay.  You've had an opportunity to review and discuss

25  with your lawyer this Application for Permission to Enter a

1    Plea of Guilty?

2    **A.**    Yes.

3    **Q.**    Okay.   And you understand everything in this application?

4    **A.**    Yes.

5    **Q.**    Nobody has made you any promises or assurances to get you

6    to plead guilty?

7    **A.**    No.

8    **Q.**    Okay.   Nobody has threatened you in any way to get you to

9    plead guilty?

10   **A.**    No.

11   **Q.**    And you're pleading guilty of your own free will because

12   you are, in fact, guilty?

13   **A.**    Yes.

14   **Q.**    Okay.   Now let's talk about what you're pleading guilty

15   to.   Now, according to this application, you are pleading

16   guilty to Counts Nine, Ten, and Eleven in the Indictment.   Is

17   that correct?

18   **A.**    Yes.

19   **Q.**    Okay.   And Count Nine charges you with a conspiracy to

20   violate the International Traffic in Arms Regulations, in

21   violation of the Arms Export Control Act.   Is that correct?

22   **A.**    Yes.

23   **Q.**    Okay.   And Count Ten charges you with money laundering.

24   And Count Eleven charges you with money laundering.   Do you

25   understand that?

1  **A.**    Yes.

2  **Q.**    Okay.  Now, we discussed -- I discussed this earlier with

3  the lawyers, but I will discuss with you again the maximum

4  penalties associated with these counts to which you are

5  pleading guilty.  Okay?

6  **A.**    Yes.

7  **Q.**    So for Count Nine, the conspiracy count, the maximum

8  prison sentence is 20 years.

9       The maximum period of Supervised Release is three years.

10      There is a mandatory Special Assessment of $100.

11      And there's a maximum fine of $1 million.

12      And you would also be required to forfeit any property

13  that you gained in the commission of the crime, or any property

14  that you used in the commission of the crime as alleged in the

15  Indictment.

16      Do you understand that?

17  **A.**    Yes.

18  **Q.**    Okay.  And with respect to Count Ten, again, the maximum

19  prison sentence is 20 years.

20      The maximum Supervised Release term:  Three years.

21      Mandatory Special Assessment of $100.

22      A maximum fine of $500,000.

23      And, again, forfeiture.

24      Do you understand that?

25  **A.**    Yes.

1 **Q.**    Okay.  And then for Count Eleven it's the same as

2 Count Ten:  Maximum prison sentence of 20 years.

3      Maximum Supervised Release term of three years.

4      Mandatory Special Assessment of $100.

5      Maximum fine of $500,000.

6      And forfeiture, as alleged in the Indictment.

7      You understand that?

8 **A.**    Yes.

9 **Q.**    So the total exposure that you have -- the maximum amount

10 of time you could spend in prison or be sentenced to prison as

11 a result of pleading guilty to those three counts -- is 60

12 years.  Do you understand that?

13 **A.**    Yes.

14 **Q.**    Okay.  Now I'm looking at paragraph 5 in this application.

15 And I'm guessing you don't have a copy of the application in

16 front of you.

17 **A.**    I don't have a copy.

18 **Q.**    So I'm going to just go ahead and read you the contents of

19 paragraph 5.  Paragraph 5 is the paragraph that provides a

20 factual description of what you did.  And I just want to --

21 I'll just read it to you, and ask you to confirm that that is

22 an accurate description of what you did.

23      It states here -- you wrote here, *I willfully joined an*

24 *agreement to export ITAR-controlled night-vision components to*

25 *Russia, and engaged in international monetary transactions*

1   *designed to conceal the proceeds of the unlawful activity.*

2       Does that accurately describe the conduct that you engaged

3   in?

4   **A.**   Yes.

5   **Q.**   Okay.  Now, with respect to sentencing, the application

6   that you filled out and signed makes reference to the

7   Sentencing Guidelines, but the Sentencing Guidelines are merely

8   advisory for me.  They are not binding on me.  Do you

9   understand that?

10  **A.**   Yes.

11  **Q.**   And you've had adequate opportunity to discuss that with

12  your lawyer?

13  **A.**   Yes.

14  **Q.**   Okay.  And I have the authority -- whatever the Guideline

15  calculation ends up being, I have the authority to impose a

16  sentence that is more severe than what is called for by the

17  Guidelines, or less severe than what is called for by the

18  Guidelines.  Do you understand that?

19  **A.**   Yes.

20  **Q.**   Okay.  And even if the Government recommends a particular

21  sentence, I may have the authority to go higher than that.  Do

22  you understand that?

23  **A.**   Yes.

24  **Q.**   Okay.  And I won't be able to reach my own conclusion

25  about what the appropriate sentence is for this case for you

1   until I've had an opportunity to review the Presentence Report

2   that will be prepared by the Probation Office, and to review

3   the filings that both sides make in connection with your

4   sentencing hearing.  Do you understand that?

5   **A.**   Yes.

6   **Q.**   Okay.  And if -- at that -- after your sentencing hearing,

7   when I hand down the sentence, if you are not happy with the

8   sentence I hand down, you cannot withdraw your guilty plea.  Do

9   you understand that?

10  **A.**   Yes.

11  **Q.**   You understand that the offenses to which you are pleading

12  guilty are felony offenses?

13  **A.**   Yes.

14  **Q.**   And by pleading guilty to felony offenses, you may be

15  giving up some of your civil rights, such as the right to vote,

16  to hold public office, to serve on a jury, to possess a

17  firearm, and the like.  Do you understand that?

18  **A.**   Yes.

19  **Q.**   Okay.  And do you understand that by -- by pleading guilty

20  to these counts, you are giving up your right to appeal any

21  pretrial rulings that I have made in this case?

22  **A.**   Yes.

23  **Q.**   Okay.  And you're not giving up the right to appeal your

24  sentence; but any pretrial rulings, including my denial of the

25  motion to suppress and my denial of the motion to sever the

1  defendants -- you're giving up your right to appeal those, and

2  any other pretrial rulings in the case.  You understand that?

3  **A.**  Those rulings for severance were not for me, but for my

4  wife.

5  **Q.**  I understand that.  And I appreciate your comment.  It

6  shows that you do have an understanding of -- a good

7  understanding of these proceedings.

8      But it does apply to my denial of your motion to suppress.

9  **A.**  Yes.

10  **Q.**  Okay.  You do have the right to continue to plead not

11  guilty.  Do you understand that?

12  **A.**  Yes.

13  **Q.**  And if you continue to plead not guilty, you have the

14  right to a jury trial.  You understand that?

15  **A.**  Yes.

16  **Q.**  And at that trial you would be presumed innocent; and the

17  Government would be required to prove its case beyond a

18  reasonable doubt.  Do you understand?

19  **A.**  Yes.

20  **Q.**  You'd have the right to counsel at trial and at every

21  other stage in the proceedings.  Do you understand that?

22  **A.**  Yes.

23  **Q.**  You would have the right to testify in your defense.

24  You'd also have the right not to testify.  And if you chose not

25  to testify, that could not be used against you at trial.  Do

1  you understand that?

2  A.    Yes.

3  Q.    Okay.  You'd have the right to cross-examine any

4  Government witnesses, and the right to call your own witnesses

5  in your defense.  You understand that?

6  A.    Yes.

7  Q.    And by entering this guilty plea, you're giving up the

8  trial rights I've just described, as well as other rights

9  associated with a criminal trial.  Do you understand that?

10 A.    Yes.

11        THE COURT:  Okay.  Is there anything else I should be

12 discussing with Mr. Morgovsky before taking his plea?

13        MR. OSTERHOUDT:  (Shakes head from side to side.)

14        MR. SAMPSON:  No, Your Honor.

15 I would note that the paragraph 5 is general.  And the

16 Government is prepared to give a proffer of what the Government

17 would prove at trial, had this case proceeded to trial.

18        THE COURT:  Why don't you go ahead and do that.

19        MR. SAMPSON:  Thank you, Your Honor.

20 Were this case to proceed to trial, the Government would

21 be able to prove beyond a reasonable doubt the following facts.

22 Your Honor, Mr. Morgovsky and Mrs. Morgovsky --

23 And we'll talk about Mrs. Morgovsky in a bit later.

24 -- used a company --

25 The name of the company:  Hitek International.

1    -- which had previously been in business in the 1990s, to

2  purchase from the night-vision industry over a thousand Image

3  Intensifier Tubes, which are the critical components in the

4  night-vision rifle scope.

5    Your Honor, Hitek International bought these with the

6  understanding by the sellers that they would not be exported.

7  Mr. Morgovsky and Mrs. Morgovsky signed export statements of

8  understanding, indicating that they would not export.

9    The Government would prove dozens of shipments to Moscow,

10  Russia, to a company called "Infratech."  That is a company

11  that Mr. Morgovsky is associated with in Moscow.

12    Without going too much into detail, the means involved

13  using numerous shippers -- UPS, FedEx, DHL, as well as freight

14  forwarders -- to forward items to Moscow, Russia, or to people

15  in Europe, which would forward them on to Moscow.  They

16  contained general descriptions of the items that were

17  contained, to disguise the true nature of the shipments; that

18  is, the true nature of the controlled components which cannot

19  be exported from the United States without a license.

20    And they used fake company names, such as "Discount

21  Camera," "Optics Express," other company names like that, along

22  with, you know, mailbox addresses; UPS Store mailbox addresses.

23    Your Honor, further, the defendants' accounts -- accounts

24  the defendants controlled -- received, over a 10 year period,

25  approximately $9 million in deposits internationally.  Many of

1 these are tied directly to statements employees of Infratech

2 made about how much money would be paid to Mr. Morgovsky.

3     Further, one of those bank accounts that received deposits

4 from abroad was in the name of an individual named Gary Piper.

5 Gary Piper has been deceased for many decades.  And the

6 evidence would show that Mr. Morgovsky used the identity of a

7 Gary Piper as well as the identities of other individuals in

8 furtherance of the conspiracy.

9     Finally, the evidence would show, had this case proceeded

10 to trial, that Mr. Morgovsky was involved in laundering at

11 least $222,000 of proceeds from this export conspiracy to the

12 United States, using the Gary Piper account as well as another

13 business account.

14          **THE COURT:**  Thank you.

15          **MR. SAMPSON:**  And I would just point out, Your Honor,

16 that I believe the Court discussed forfeiture.  Ms. Cornell may

17 address this.

18          **MS. CORNELL:**  I just wanted -- just for the

19 particulars, Your Honor, I would like Mr. Morgovsky to agree

20 that, pursuant to Title 18 of United States Code

21 Section 981(a)(1)(C), 22 United States Code Section 401, and

22 28 U.S.C. Section 2461(c), that the following three items that

23 were seized at his house were properly involved in the offense

24 alleged in Count Nine, and therefore forfeitable to the U.S.

25     The first one is one optic lens, size small, Tube Serial

1  Number 4654898, Tube Type F9815SLG.

2       The second one is one optic lens, size medium,

3  Tube Serial Number 4656232, Tube Type F9815SLG.

4       And one optic lens, size large,

5  Tube Serial Number 4732440, Tube Type F9815SLG.

6       And I'd also ask the defendant to agree that, pursuant to

7  Title 18 United States Code Section 982(a)(1), that there's a

8  forfeiture judgment owed to the United States in the amount of

9  $222,929.61, which represents the property involved in the

10  offenses alleged in Counts Nine and Ten, and therefore is

11  forfeitable.

12  **BY THE COURT**

13  **Q.**   Okay.  Mr. Morgovsky, did you understand that description

14  of the property and proceeds that you would be agreeing to have

15  forfeited?

16  **A.**   I understand.  And I would like to say that when they're

17  talking about forfeiture pertaining to Counts Ten and Eleven, I

18  agree to that.

19       When we are talking about forfeiture of those lenses and

20  whatever devices, it was not part of the Agreement, and I don't

21  believe that those items are in any way connected to alleged

22  criminal activity; and therefore, I don't see any reason why

23  those items would be forfeited.

24            **THE COURT:**  Okay.

25            **MR. SAMPSON:**  There is no agreement, Your Honor.

1  **BY THE COURT**

2  **Q.**   Okay.  So you want to go to trial?

3  **A.**   Pardon me?

4  **Q.**   So you want to go to trial then?

5  **A.**   Are they seeking -- I don't think that they're seeking to

6  forfeit those items in the Indictment.

7          **MS. CORNELL:**  The Court -- the Government did file a

8  Bill of Particulars.  I don't have the actual ECF number on

9  this, but we did notify the defendants that the Government was

10 seeking to forfeit the three optic lenses and the -- also the

11 money judgment.

12         **THE COURT:**  Okay.  Well, do you want --

13     I mean, perhaps the answer is to take a time out, and

14 maybe proceed with Mrs. Morgovsky while you discuss this, and

15 work it out?

16         **MR. SAMPSON:**  Mrs. Morgovsky's Plea Agreement is

17 dependent on the successful plea of Mr. Morgovsky, so I don't

18 think it's appropriate to start her until we resolve him.

19         **THE COURT:**  Okay.  So can we --

20     So where is the Bill of Particulars?  Point it to me.

21 I'll look it up on the docket.

22         **MS. CORNELL:**  I don't have the ECF number, but I have

23 the --

24 (Whereupon a document was tendered to the Court.)

25         **THE COURT:**  And is there anything --

1       So the Agreement in the Application for Permission to

2   Enter a Plea of Guilty is forfeiture as alleged.

3       So let's start with the Indictment.  Where are the

4   forfeiture allegations in the Indictment?

5   (Pause in proceedings.)

6           MS. CORNELL:  All right.  I'm looking at the

7   Superseding Indictment with regard to Count Nine.

8           MR. MC CULLOUGH:  Page 37.

9           THE COURT:  What's the date of this?  I may have

10  the -- I may not have the --

11          MR. SAMPSON:  No.  That's Jury Instructions.

12          THE COURT:  What?

13          MS. CORNELL:  So the Superseding Indictment -- I

14  apologize -- pursuant to Count --

15          THE COURT:  Is this from April 27, or is it a later

16  date?

17          MR. SAMPSON:  Yes.  That is the Superseding

18  Indictment.  Yes.

19          MS. CORNELL:  Yes.

20          THE COURT:  Okay.  Go ahead.

21          MS. CORNELL:  Bottom of page 12 starts with

22  paragraph 49.

23          THE COURT:  Mm-hm.

24          MS. CORNELL:  Upon conviction on Count Nine, alleged

25  that -- the defendants shall forfeit to the U.S. proceeds.

 1        And then what's relevant here is Subsection (b):  Any

 2   property involved in such offense, including but not limited to

 3   defense articles, or other export-controlled items intended to

 4   be illegally exported.

 5        And then so that's for Count Nine --

 6              **THE COURT:**  Okay.

 7              **MS. CORNELL:**  -- which is the only thing that's in

 8   dispute right now.

 9        And then the Government did file a Bill of Particulars --

10              **THE COURT:**  Okay.

11              **MS. CORNELL:**  -- where we provided notice to the

12   defendants, in addition to this general language in the

13   Superseding Indictment, that the -- pursuant to the same

14   statutes, the Government would seek to forfeit those three

15   optic lenses.

16              **THE COURT:**  All right.  Let me --

17              **MS. CORNELL:**  The calendar --

18              **THE COURT:**  Let me look at the Bill of Particulars.

19   Do you have a rough recollection of when you might have filed

20   it?

21              **MS. CORNELL:**  Possibly June or July.

22              **THE COURT:**  Of 2017?

23              **MR. OSTERHOUDT:**  2017.

24              **MS. CORNELL:**  2017.

25              **THE COURT:**  Okay.  There's a motion for Bill of

1  Particulars filed July 11.

2          MS. CORNELL:  That was probably defendants'.

3          MR. OSTERHOUDT:  It was denied.  It was a Defense

4  motion.

5          MS. CORNELL:  This is just a -- it's called a "Bill

6  of Particulars."  It's basically just a notice.

7          THE COURT:  Okay.  So I denied the motion for a Bill

8  of Particulars on July 25.  So it was sometime after that?

9          MS. CORNELL:  Those are -- yeah, but those were --

10  that -- the defendants' Bill of Particulars was completely

11  unrelated to what the Government filed as a Bill of

12  Particulars.

13          THE COURT:  Understood.

14      (Discussion off the Record.)

15          THE CLERK:  This might be it, from February 21, 2018.

16  United States' Bill of Particulars for Forfeiture of Property.

17          THE COURT:  Okay.  I'm sure that's it, yeah.  You

18  said February of 2018?

19          THE CLERK:  Yeah.  So that is Docket Number 183.

20          THE COURT:  Okay.  Got it.

21  (Discussion off the Record.)

22          THE CLERK:  Yes, that's it.

23          THE COURT:  So I've pulled it up.  And, you know, I

24  have to admit that I wasn't paying attention to the serial

25  numbers and the tube types you were rattling off --

1          MS. CORNELL:  Yes.

2          THE COURT:  -- but I assume that you were rattling

3   them off direct from the Bill of Particulars.

4          MS. CORNELL:  Yes, from the document that was just

5   handed to you.  I read it directly from there.

6          THE COURT:  Okay.  Yeah.  So just to read it off

7   again, one optic lens, size small, Tube Serial Number 4654898,

8   Tube Type F9815SLG.

9          One optic lens, size medium, Tube Serial Number 4656232,

10  Tube Type F9815SLG.

11         And one optic lens, size large, Tube Serial Number

12  4732440, Tube Type F9815SLG.

13         Those are the items?

14         MR. MC CULLOUGH:  Yes, Your Honor.

15         MR. SAMPSON:  Yes.

16         THE COURT:  Okay.  And so it certainly does seem

17  consistent with the Application for Permission to Enter a Plea

18  of Guilty that the defendant is acknowledging that these items

19  will be forfeited.

20         Mr. Morgovsky, have you changed your mind?

21         DEFENDANT NAUM MORGOVSKY:  Your Honor, at this point

22  I don't understand the implications of me changing or not

23  changing my mind, because it's not included in the application.

24  It's not in the Indictment.

25         THE COURT:  It is included in the application,

1  because the application states, "forfeiture as alleged."  And

2  the Government filed a Bill of Particulars, specifying that

3  these three items would be included in the forfeiture; but --

4          **DEFENDANT NAUM MORGOVSKY:**  So --

5          **THE COURT:**  -- if you didn't understand that when you

6  signed the application, or if you believe that the forfeiture

7  of these three items should cause you to not plead guilty, that

8  is your right.

9          **DEFENDANT NAUM MORGOVSKY:**  I understand.

10     It just --

11     "As alleged" -- I don't know where that language comes

12  from.  If -- I mean, if this is a legitimate language in the

13  application for a plea of guilty.

14          **THE COURT:**  Okay.  Do you want to take a time out,

15  and speak with your lawyer about this?

16          **DEFENDANT NAUM MORGOVSKY:**  Um.

17          **THE COURT:**  I mean, my concern now, to be honest, is

18  that I think you might be attempting to manipulate the

19  proceedings here.

20          **DEFENDANT NAUM MORGOVSKY:**  No, no.

21          **THE COURT:**  And so -- but I want you to take whatever

22  time you need to discuss this with your lawyer.  And then we're

23  going to come back, and you're either going to plead guilty, or

24  you're going to go to trial.

25          **DEFENDANT NAUM MORGOVSKY:**  I understand.

1          **THE COURT:**  Okay.  So I'm going to give you five

2     minutes right now to speak with your lawyer.  Okay?  And then

3     you will -- I mean, I am going to be sitting here.  And I'm

4     going to give you five minutes to speak with your lawyer.  And

5     then I'm going to find out from you whether you would like to

6     plead guilty or not.  Okay?

7          **DEFENDANT NAUM MORGOVSKY:**  Your Honor, based on your

8     language, I understand that at this point I don't have any

9     choice but to accept that.

10         **THE COURT:**  You have every choice.  You have -- you

11    have the absolute right not to accept this, and to refuse to

12    plead guilty, based on your concern that you do not wish to

13    give up these three items; that you do not wish to forfeit

14    these three items.  You have the absolute right to do that.

15    And you do not have to plead guilty.  And you can go to trial.

16         And so I'm going to -- we're going to take a five-minute

17    time out right now.  And I'm going to have you speak with your

18    lawyer to make sure that you have time to calmly think about

19    this.

20         And, in fact, I'll leave the bench.  And I'll come back in

21    five minutes.  And then we'll find out what you would like to

22    do.

23         **DEFENDANT NAUM MORGOVSKY:**  Your Honor, may I explain

24    to you why your understanding that I was trying to manipulate

25    something was not correct?

1          THE COURT:  No.  It doesn't matter.  We can talk

2     about that at sentencing, if you wish.

3          DEFENDANT NAUM MORGOVSKY:  Okay.

4          THE COURT:  So I will --

5     I'm sorry?

6          MR. MC CULLOUGH:  Your Honor, for the Record, I just

7     want to make sure that there's no misunderstanding as to

8     terminology that the Government is using here.  We are talking

9     about the three scopes that were seized from the Avondale

10    residence, as described in the Bill of Particulars.  And all of

11    the serial numbers match those scopes.  So I just wanted to

12    communicate that to Mr. Morgovsky, to the extent that there is

13    any confusion as to what optic lens might be.

14         THE COURT:  Okay.  Very good.  We'll have --

15         DEFENDANT NAUM MORGOVSKY:  And, Your Honor, at this

16    point I don't see any reason to discuss it with my attorney.

17         THE COURT:  Okay, but I believe -- but

18    Mr. Morgovsky --

19         DEFENDANT NAUM MORGOVSKY:  Yes.

20         THE COURT:  I believe that we should take a

21    five-minute time out to make sure that you've had enough time

22    to think about it, and to ask any questions of your lawyer, to

23    make sure that you don't feel unduly pressured to plead guilty,

24    because I want to make very clear that you have the absolute

25    right not to plead guilty in this case.  And if these three

1  items are of significant concern to you, and you do not wish to

2  forfeit those items, you absolutely do not need to plead

3  guilty.  And if you had a misunderstanding about what you were

4  agreeing to in terms of forfeiture, it's totally appropriate

5  for you not to plead guilty.

6       And I want to make sure that you've had adequate time to

7  think about it, and adequate time to discuss it with your

8  counsel.  So we will be taking a five-minute break.  I will be

9  back in five minutes.  And then I will ask you further

10  questions about whether you understand what you are agreeing to

11  forfeit if you wish to proceed.  Okay?

12            **DEFENDANT NAUM MORGOVSKY:**  Your Honor --

13            **THE COURT:**  Mr. Morgovsky, we're taking a five-minute

14  time out right now.  Okay?

15            **DEFENDANT NAUM MORGOVSKY:**  Okay.

16            **THE COURT:**  Go sit down and talk to your counsel.

17  Okay?

18            **DEFENDANT NAUM MORGOVSKY:**  Okay.

19            **THE CLERK:**  Court is in recess.

20  (Recess taken from 11:27 a.m. until 11:34 a.m.)

21            **MR. OSTERHOUDT:**  We're ready to proceed, Your Honor.

22            **THE COURT:**  Okay.  We're back on the Record.  And,

23  Mr. Morgovsky, I'll just remind you that you're under oath.

24  **BY THE COURT**

25  **Q.**   Let me ask you first:  Do you believe that you've had

1  adequate time to consider this issue about the forfeiture of

2  those three items?

3  **A.**   Yes.

4  **Q.**   Okay.  And the -- it sounds like you did not understand

5  when you filled out this Application for Permission to Enter a

6  Plea of Guilty that you would be agreeing to forfeit those

7  three items.  Are you now prepared to agree that those three

8  items will be forfeited?

9  **A.**   Yes.

10  **Q.**   Okay.  And you've had adequate time to discuss that with

11  your counsel?

12  **A.**   Yes.

13  **Q.**   Okay.  And as I've made very clear before the break, you

14  are perfectly entitled not to plead guilty and to go to trial

15  in this case, if those three items are important to you and do

16  not wish to forfeit them.  Do you understand that?

17  **A.**   Yes.

18  **Q.**   Okay.  And do you continue to wish to enter a plea of

19  guilty?

20  **A.**   Yes.

21          **THE COURT:**  Okay.  Anything else that I should be

22  discussing with Mr. Morgovsky?

23          **MR. SAMPSON:**  Not from the Government, Your Honor.

24          **THE COURT:**  Okay.  Mr. Osterhoudt?

25          **MR. OSTERHOUDT:**  No, Your Honor.

1     He -- I just wanted to say by way of explanation that

2    Mr. Morgovsky needed a little more explanation.  And I take

3    responsibility for that.  And I think he wasn't trying to do

4    anything that was manipulative or disrespectful to the Court.

5    He wanted a little bit further information on the basis for --

6    we discussed it.  And I appreciate Your Honor giving us the

7    opportunity to do so.

8         **THE COURT:**  Okay.

9    **Q.**  So, Mr. Morgovsky, how do you plead to counts Nine, Ten,

10   and Eleven:  Guilty, or not guilty?

11   **A.**  Guilty.

12        **THE COURT:**  Okay.  I find that Mr. Morgovsky is

13   competent and capable of entering an informed plea; that he's

14   aware of the nature of the charges and the consequences of the

15   plea; and that the guilty plea is a knowing and voluntary plea

16   supported by an independent basis in fact containing each of

17   the essential elements of the offenses.

18        I therefore accept the plea, and the defendant is now

19   adjudged guilty of the offenses.

20        I will go ahead and sign this application, and hand it

21   down to Kristen.

22        What's today?  The 12th?

23        **THE CLERK:**  Yes.

24        **THE COURT:**  And now we should schedule sentencing.

25        Mr. Morgovsky, I will refer you to our Probation Office

for the preparation of a Presentence Report.  The purpose of

the Presentence Report is to assist me in determining what the

appropriate sentence will be for you.  You'll be asked to meet

with the Probation Officer.  You're entitled to have your

attorney there, if you wish.  And once the Presentence Report

is prepared, you will have an opportunity to object to anything

that is in the Presentence Report.

And you will, of course, have an opportunity to file

papers with me in connection with your sentencing, as will the

Government.  And I will consider all of that at your sentencing

hearing.

So when should the hearing take place?

**THE CLERK:**  September 18 at 10:30.

**THE COURT:**  Does that work for everyone?

**MR. SAMPSON:**  That's fine for the Government,

Your Honor.

**MR. MC CULLOUGH:**  Yes, Your Honor.

**THE COURT:**  Sentencing will be at September 18.

Unless we're in trial, it will be at 10:30 a.m.  Right,

Kristen?

**THE CLERK:**  Yes.

**MR. OSTERHOUDT:**  Thank you.

**MR. MC CULLOUGH:**  Your Honor, would it be appropriate

for me to address monitoring at this point, in advance of

sentencing?

1      **THE COURT:**  Sure.

2      **MR. MC CULLOUGH:**  Your Honor, in light of defendant's

3   use of fake identity and fake passport and identification

4   materials, we would ask that the Court at least consider some

5   enhanced monitoring between now and the time of sentencing, to

6   ensure that the defendant will appear at the sentencing.  We

7   would advocate for GPS monitoring.  That would be the

8   Government's position.

9      **MR. OSTERHOUDT:**  Your Honor, Mr. Morgovsky was on

10  monitoring for a while, and -- quite a while.  And Pretrial

11  Services asked that he be removed, because he was absolutely

12  compliant.  There was not a single bump, except when caused by

13  the failure of the equipment.  Mr. Morgovsky is very

14  responsible.  He made appointments with me.  We would confirm

15  them with Pretrial.  He would come to my office.  And it

16  allowed us much more freedom to do that, and assisted us in our

17  preparation, even for what we did today, to be able to have

18  that freedom.  So I don't think it's necessary.

19      And I understand the Government's position.

20      Respectfully, however, I would ask the Court to allow him

21  to remain as present, unless any problem develops.  You know,

22  his passport has been turned in.  There hasn't been a whisper

23  of complaint about him at any time.

24      **THE COURT:**  Mr. Morgovsky is attempting to

25  communicate something with you, and I'm happy to allow you to

PROCEEDINGS

1  do that.  Go ahead.  Tell him whatever you need.

2          **DEFENDANT NAUM MORGOVSKY:**  I just wanted to point out

3  Mr. Osterhoudt that I'm still monitoring.

4          **MR. OSTERHOUDT:**  Yeah.  Right.

5          **DEFENDANT NAUM MORGOVSKY:**  And I have a curfew.  I'm

6  still monitored.

7          **MR. OSTERHOUDT:**  He's still monitored.  I meant that

8  GPS monitoring was no longer required for him.  And I think

9  he's fine with what he has.

10         **THE COURT:**  Well, what I'm going to do on that -- I

11  think, you know, the Pretrial folks have spent a lot of time on

12  this.  A Magistrate, presumably, has spent a lot of time on

13  this.  And I think what I will ask you to do is -- it sounds

14  like the Government is not requesting remand now.  And so I

15  will ask the Government.  If the Government wishes for the

16  terms of pretrial -- conditions of pretrial release to be

17  altered, you can go to the Magistrate Judge and make that

18  request.

19         **MR. MC CULLOUGH:**  Yes, Your Honor.  Thank you.

20         **THE COURT:**  Because the Magistrate and the Pretrial

21  Services Officer are more familiar with the situation than I

22  am.

23         **MR. OSTERHOUDT:**  Thank you.

24         **MR. MC CULLOUGH:**  Thank you, Your Honor.

25         **THE COURT:**  Okay.  All right.

1        So we're done with Mr. Morgovsky.  Right?

2            **MR. OSTERHOUDT:**  We are.  Thank you, sir.

3            **THE COURT:**  All right.  Next.  Okay.  Now, I

4   understand there is a Plea Agreement in this case?

5            **MR. SAMPSON:**  Yes, Your Honor.

6            **THE COURT:**  I have not seen the Plea Agreement yet.

7   Does anyone want to hand me a copy?

8   (Whereupon a document was tendered to the Court.)

9            **MR. MC CULLOUGH:**  I'm handing Your Honor the

10  original.

11           **THE COURT:**  That's the original?

12           **MR. MC CULLOUGH:**  Yes.

13           **THE COURT:**  Okay.  All right.  Give me a moment to

14  take a look at it.  If I could ask one more question about

15  Mr. Morgovsky's case, is it the Government's intention at the

16  sentencing hearing to dismiss the remaining counts after

17  Mr. Morgovsky is sentenced?

18           **MR. SAMPSON:**  At this time it is not.

19           **THE COURT:**  It is not.  Okay.

20      And, Mr. Osterhoudt, you were aware of that, as well?

21           **MR. OSTERHOUDT:**  Yes, yes.

22           **THE COURT:**  And you informed your client of that, as

23  well?

24           **MR. OSTERHOUDT:**  Yeah.

25           **THE COURT:**  Okay.  Let me read through this.

1  (Pause in proceedings.)

2          THE COURT:  And the Defense has a copy of this

3  Plea Agreement?

4          MR. MAZER:  Yes.

5          THE COURT:  Okay.  In front of you?  With you?

6          DEFENDANT IRINA MORGOVSKY:  Yes.

7          MR. MAZER:  Yeah.

8          THE COURT:  Okay.  So on page 5 in subparagraph (g),

9  let me just read it, just to make sure we're all on the same

10  page.  So you lined out a couple of words.  And so what it is

11  now -- what it now reads is, *In furtherance of the activities*

12  *described above, I did knowingly and willfully signed checks*

13  *for purchases of night vision and thermal vision described*

14  *above, and misrepresented the end user in connection with*

15  *purchases of the night vision and thermal vision described*

16  *above.*

17      It looks like there's a typo there, or a typo results from

18  the edits that you made.

19      So it should -- looks like it should say, *I did knowingly*

20  *and willfully sign checks.*

21      Is that right?

22          MR. SAMPSON:  Yes, Your Honor.

23          MR. MAZER:  That's correct, Your Honor.

24          THE COURT:  Okay.  So that's just a typo.  As long as

25  we all understand that, that's fine.

1          **MR. MAZER:**  Okay.

2          **THE COURT:**  So it should say --

3      Let me read it again, because as a result of the typo I

4  had --

5          **MR. MC CULLOUGH:**  Your Honor, I think it's the same

6  typo with respect to the tense of "misrepresented."

7          **MR. SAMPSON:**  Or we could just delete the word "did."

8          **THE COURT:**  Yeah.  Okay.  So if we delete the word

9  "did," it reads, *In furtherance of the activities described*

10 *above I knowingly and willfully signed checks for purchases of*

11 *night vision and thermal vision described above, and*

12 *misrepresented the end user in connection with purchases of the*

13 *night vision and thermal vision described above.*

14     Is that correct?

15         **DEFENDANT IRINA MORGOVSKY:**  Yes.

16         **MR. MAZER:**  Yes, Your Honor, it is correct.  Yes.

17         **THE COURT:**  That's accurate.  Okay.

18     Okay.  Now, and in this -- just to clarify, in this

19 case -- in contrast to Mr. Morgovsky's case, in this case the

20 Government is agreeing to dismiss any open charges after

21 sentencing on this count.  Is that right?

22         **MR. SAMPSON:**  Count Six, we will move to dismiss.

23         **THE COURT:**  Count Six.

24         **MR. SAMPSON:**  We do move to dismiss when the plea is

25 entered.

1        **THE COURT:**  When the plea is entered.  Oh, okay.

2    The Agreement says at the time of sentencing.

3        **MR. SAMPSON:**  Oh, correct.  I'm sorry, Your Honor.

4    That's the proper language.  At the time of sentencing we will

5    move to dismiss.

6        **THE COURT:**  Okay.  Let me just look at one more thing

7    here.  Okay.  All right.  So that sounds good.  I'm ready to

8    proceed.  Mrs. Morgovsky, as I think you know, now you need to

9    answer a series of questions, and you need to do so under oath.

10   So I'll ask the courtroom deputy to administer the oath to you

11   now.

12                       **IRINA MORGOVSKY**,

13   called as a defendant for the The Court, having been duly

14   sworn, testified as follows:

15        **DEFENDANT IRINA MORGOVSKY:**  I do.

16        **THE CLERK:**  Thank you.

17                         **EXAMINATION**

18   **BY THE COURT**

19   **Q.**   Okay.  Now, Mrs. Morgovsky, now that you're under oath, if

20   you answer any of my questions falsely, the Government can

21   bring charges against you for perjury or for making false

22   statements.  Do you understand that?

23   **A.**   I do.

24   **Q.**   Okay.  And as I told your husband, please feel free at any

25   time to call time out and ask questions of your lawyer; ask me

1   to repeat a question if you need me to.

2   **A.**   Okay.

3   **Q.**   Or tell me you don't understand if you don't understand.

4   Okay?

5   **A.**   Okay.

6   **Q.**   It's not a speed test.  And the only thing that's

7   important is that you understand everything.  So there's no

8   penalty for slowing the process down.  Okay?

9   **A.**   Thank you.

10  **Q.**   Okay.  What is your full name?

11  **A.**   Irina Morgovsky.

12  **Q.**   Are you a U.S. citizen?

13  **A.**   Yes.

14  **Q.**   Where are you born?

15  **A.**   Kiev, Ukraine, former U.S.S.R.

16  **Q.**   And how old are you?

17  **A.**   I'm 66 now.  I'll be 67 in a month.

18  **Q.**   And how far did you go in school?

19  **A.**   I have mechanical degree from -- I don't know.  It's

20  called "Institute," but it's actually kind of even with

21  university.  Six years.  And mechanical degree in engineering.

22  **Q.**   And are you currently under the influence of any drug,

23  medication, or alcoholic beverage that would hinder your

24  ability to understand the proceedings here today?

25  **A.**   No.  I'm taking some antidepressant, but they're not

1  affect my ability to understand any of the proceedings.

2  **Q.**   Okay.   Thank you.   Any other medication or --

3  **A.**   No.

4  **Q.**   Okay.   Thank you.

5  **A.**   No.

6  **Q.**   Are you fully satisfied with the advice and information

7  you have received from your lawyer in this case?

8  **A.**   Yes.

9  **Q.**   And have you had an opportunity to read and discuss the

10 Plea Agreement before signing it?

11 **A.**   Yes.

12 **Q.**   Okay.   And you understand the terms of the Plea Agreement?

13 **A.**   I think so.

14 **Q.**   We'll go over the most important parts of those to make

15 sure.   Nobody has made you any promises or assurances that are

16 not in the Agreement, to get you to sign the Agreement?

17 **A.**   No.

18 **Q.**   All right.   And nobody has threatened you in any way to

19 get you to accept the Agreement?

20 **A.**   No.

21 **Q.**   And you're pleading guilty of your own free will because

22 you are, in fact, guilty?

23 **A.**   Yes.

24 **Q.**   Okay.   Now let's go over some of these most important

25 provisions.   Now, the Count you are pleading guilty to is

1   Count Nine in the Indictment, which charges you with conspiracy

2   to commit a violation of the International Traffic in Arms

3   Regulations, in violation of the Arms Export Control Act,

4   22 U.S.C. Section 2778.  Do you understand that?

5   **A.**   Yes.

6   **Q.**   Okay.  And let's talk about the maximum penalties for that

7   Count that you're pleading guilty to.

8        The maximum prison term is 20 years.

9        The maximum fine is $1 million.

10       The maximum period of Supervised Release is three years.

11       There is a mandatory Special Assessment of $100.

12       And you will be required to forfeit the property that you

13   acquired or used in the commission of this offense, as

14   described in the Plea Agreement.

15       Do you understand that?

16   **A.**   Yes.

17   **Q.**   Okay.  Now, let's look carefully at paragraphs 1 and 2 of

18   the Plea Agreement.

19       Paragraph 1 describes the maximum penalties that we just

20   discussed.  And it also describes the elements of the offense

21   to which you are pleading guilty.

22       Paragraph 2 contains a factual narrative description of

23   what you did.

24       Have you had enough opportunity to go over these two

25   paragraphs carefully with your lawyer before signing the

1   Agreement?

2   **A.**   Yes.

3   **Q.**   And do those two paragraphs contain an accurate

4   description of what you did?

5   **A.**   Yes.

6   **Q.**   Okay.  Now, also in your Plea Agreement there's reference

7   to the Sentencing Guidelines, but as I mentioned to your

8   husband, the Sentencing Guidelines are only advisory for me.

9   They are not binding upon me.  Do you understand that?

10   **A.**   Yes.  I do.

11   **Q.**   Okay.  And I have the authority to impose a sentence that

12   is higher than what is called for -- what is advised by the

13   Guidelines, or lower than what is advised by the Guidelines.

14   Do you understand that?

15   **A.**   Yes.

16   **Q.**   Okay.  And even if the Government recommends a particular

17   sentence at your sentencing hearing, I may have the authority

18   to go higher than that.  Do you understand that?

19   **A.**   I do.

20   **Q.**   Okay.  And I won't be able to reach my own conclusion

21   about the appropriate sentence for you until I have reviewed

22   the Presentence Report and the papers that both sides have

23   filed in connection with your sentencing.  Do you understand

24   that?

25   **A.**   Yes, I do.

MORGOVSKY, IRINA - EXAMINATION / THE COURT

1  Q.    Okay.   And if you're not happy with the sentence after I

2  issue it, you are not entitled to withdraw your guilty plea.

3  Do you understand that?

4  A.    Yes.

5  Q.    Okay.   And you understand that the offense to which you

6  are pleading guilty is a felony offense?

7  A.    I do.

8  Q.    And by pleading guilty to a felony offense, you may be

9  giving up some civil rights, such as the right to vote, the

10 right to hold public office, the right to serve on a jury,

11 possess a firearm, and other similar rights.   Do you understand

12 that?

13 A.    Yes.

14 Q.    Okay.   And by pleading guilty, you are also giving up your

15 right to appeal all of my pretrial rulings.   Do you understand

16 that?

17 A.    Yes.

18 Q.    And that includes my ruling denying the motion to sever,

19 and my ruling denying the motion to suppress.   Do you

20 understand that?

21 A.    Yes.

22 Q.    And you understand that by pleading guilty, you are also

23 giving up the right to appeal your sentence or otherwise attack

24 the validity of your sentence, other than to argue that you

25 received ineffective assistance of counsel.   Do you understand

1  that?

2  **A.**    Yes.

3  **Q.**    Okay.  Now, let's talk about your trial rights.  You do

4  have the right to continue to plead not guilty.  Do you

5  understand that?

6  **A.**    Yes.

7  **Q.**    And if you continue to plead not guilty, you will have the

8  right to a jury trial.  You understand that?

9  **A.**    Yes.

10  **Q.**    And at the jury trial you would be presumed innocent, and

11  the Government would be required to prove its case beyond a

12  reasonable doubt.  Do you understand that?

13  **A.**    I do.

14  **Q.**    Okay.  And at that trial you'd have the right to counsel.

15  You'd also have the right to counsel at every other stage in

16  the proceeding.  Do you understand that?

17  **A.**    Yes.

18  **Q.**    And you'd have a right to testify in your defense at

19  trial.  You would also have the right not to testify; and if

20  you chose not to testify, that could not be used against you at

21  trial.  Do you understand that?

22  **A.**    Yes.

23  **Q.**    At trial you would also have the right to cross-examine

24  any Government witnesses and the right to call your own

25  witnesses in your defense.  Do you understand that?

1  **A.**   Yes.

2  **Q.**   And by entering this guilty plea, you're giving up the

3  trial rights I just described, as well as all other rights

4  associated with a criminal trial.  Do you understand that?

5  **A.**   I do.

6  **Q.**   Okay.  And I guess let me just ask you one other question

7  about the Plea Agreement.  Since there was some confusion with

8  your husband on the issue of forfeiture --

9  **A.**   Mm-hm.

10  **Q.**   -- I want to ask you specifically about that.  Now, in

11  paragraph 11 of the Plea Agreement, which is on page 8, it

12  contains a description of the property that you agree to

13  forfeit as part of this Plea Agreement.

14  **A.**   Mm-hm.

15  **Q.**   And it includes the three items that I was discussing with

16  your husband.

17  **A.**   Okay.

18  **Q.**   Did you have sufficient opportunity to review this

19  paragraph carefully with your lawyer?

20  **A.**   I do.  I did.  I'm sorry.

21  **Q.**   Okay.  And does this accurately describe your agreement

22  regarding the property that you agree will be forfeited?

23  **A.**   I'm sorry.  I --

24  **Q.**   Let me ask you the question again.  Does this paragraph

25  accurately describe the property that you agree must be

1  forfeited?

2  **A.**    Yes.

3          **THE COURT:**  Okay.  Is there anything else I should

4  discuss with Mrs. Morgovsky before taking her plea?

5          **MR. SAMPSON:**  I don't believe so.  Just to clarify,

6  in addition to the three scopes, there's the passport in the

7  name of Victoria Ferrara.  The Government -- part of the

8  Government's promises in this case, in paragraph 17, is that

9  the Government will not seek at sentencing a sentence above the

10  low end of the applicable Guideline Range.

11      Thank you.

12          **THE COURT:**  Okay.  Thank you.  Anything else,

13  Mr. Mazer?

14          **MR. MAZER:**  No, thank you, Your Honor.

15  **BY THE COURT**

16  **Q.**    Okay.  So, Mrs. Morgovsky, how do you plead to this

17  charge:  Guilty or not guilty?

18  **A.**    Guilty.

19          **THE COURT:**  Okay.  I find that Mrs. Morgovsky is

20  competent and capable of entering an informed plea, and that

21  she's aware ever the nature of the charge and the consequences

22  of the plea; and that the guilty plea is a knowing and

23  voluntary plea supported by an independent basis in fact,

24  containing each of the elements each of the essential elements

25  of the offense.  I therefore accept the plea, and

1    Mrs. Morgovsky is now judged guilty of the offense.

2         Mrs. Morgovsky, I will refer you to the Probation Office

3    for the preparation of a Presentence Report.  As I explained to

4    your husband, the purpose of the Presentence Report is to

5    assist me in determining what the appropriate sentence should

6    be for you.  You will be asked to meet with the Probation

7    Officer.  You can have your lawyer there if you wish; but in

8    any event, you'll have the right -- you will have the

9    opportunity and the right to object to anything that is

10   contained in the Presentence Report.  And you will have the

11   right to submit your own arguments to me in connection with

12   your sentencing hearing.

13        And so we will schedule the sentencing hearing.  I assume

14   it will be on the same day --

15             **DEFENDANT IRINA MORGOVSKY:**  Yes.

16             **THE COURT:**  -- as Mr. Morgovsky.  Is that what

17   everybody wants?

18             **THE CLERK:**  Yes.

19             **THE COURT:**  Okay.

20             **MR. MAZER:**  And that date was what, Your Honor?

21             **DEFENDANT IRINA MORGOVSKY:**  September 17, I think.

22             **THE CLERK:**  18.

23             **THE COURT:**  September 18 at 10:30 --

24             **MR. MAZER:**  Thank you.

25             **THE COURT:**  -- unless we're in trial, in which case

**PROCEEDINGS**

 1 | we'll move it to the afternoon.

 2 |          **MR. MAZER:**  Understood.

 3 |          **THE COURT:**  Okay.

 4 |          **DEFENDANT IRINA MORGOVSKY:**  Thank you.

 5 |          **THE COURT:**  So we will see -- unless anybody needs

 6 | anything beforehand, we will see everyone on September 18 for

 7 | sentencing.

 8 |          **MR. MAZER:**  Thank you, Your Honor.

 9 |          **MR. SAMPSON:**  Thank you, Your Honor.  And I just want

10 | to thank the members of the jury pool that came in today and

11 | yesterday.

12 |          **THE COURT:**  All right.  Thank you.

13 |     (At 11:58 a.m. the proceedings were adjourned.)

14 | I certify that the foregoing is a correct transcript from the

15 | record of proceedings in the above-entitled matter.

16 |

17 |

18 | _____ July 2, 2018
   | Signature of Court Reporter/Transcriber   Date

19 | Lydia Zinn

20 |

21 |

22 |

23 |

24 |

25 |